1
2
3
4
5
6
7
8                      IN THE UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10   SQUARE D. COMPANY,

11           Plaintiff,                    No. CIV S-08-1312 JAM EFB PS

12       vs.

13   CHAWN PHILLIP ANDERSON,
     HEATHER MARIE APODACA,
14   formerly d/b/a AA & M ELECTRIC,       ORDER AND
     and AA & M ELECTRIC, INC.,            FINDINGS AND RECOMMENDATIONS
15
             Defendants.
16   _____/

17       On February 24, 2010, the undersigned heard plaintiff's motion for terminating sanctions

18   against defendants Chawn Anderson and Heather Apodaca, formerly d/b/a AA & M Electric

19   ("individual defendants") pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(iii) and (vi).

20   Dckt. No. 71.  Attorney Robert D. Swanson appeared on behalf of plaintiff; no appearance was

21   made on behalf of the individual defendants.  For the reasons that follow, the court recommends

22   that plaintiff's motion be granted, and that the individual defendants' answer be stricken and

23   default judgment be entered against all defendants.[1]

24   _____

25       [1] On November 16, 2009, the undersigned issued findings and recommendations,
     recommending that default judgment be entered against defendant AA & M Electric, Inc.  Dckt.
26   No. 69.  In light of the findings and recommendations herein regarding all defendants, those

1   I.     <u>BACKGROUND</u>

2       This is an action pursuant to the Racketeer Influenced and Corrupt Organizations Act

3 ("RICO"), 18 U.S.C. §§ 1961 *et seq*.  Plaintiff claims that defendants engaged in a fraudulent

4 scheme of submitting false invoices to plaintiff, in excess of $1 million, in violation of 18 U.S.C.

5 § 1962(c) ("It shall be unlawful for any person employed by or associated with any enterprise

6 engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or

7 participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of

8 racketeering activity or collection of unlawful debt.").  The following additional claims are also

9 made:  breach of contract, common law fraud, and violation of California Business and

10 Professions Code sections 17200 *et seq*. (fraudulent business practices).

11       The complaint recounts that, commencing in late 2004, plaintiff initiated a voluntary

12 recall of its Arc Fault Interrupter Circuit Breakers manufactured by plaintiff between March 1,

13 2004 and September 23, 2004.  In 2005, plaintiff reached an agreement with defendants to

14 replace circuit breakers subject to the recall.  Defendants submitted invoices for more than

15 18,000 addresses purportedly serviced between November 2005 and June 2007; plaintiff

16 contends these invoices included invalid addresses, and valid addresses that were not serviced.

17       Plaintiff is incorporated in Delaware, with its principal place of business in Palatine,

18 Illinois; the individual defendants are married, citizens of California and domiciled in San

19 Joaquin County.  The individual defendants were the sole proprietors of defendant AA & M

20 Electric d/b/a until it became incorporated on January 12, 2007, in California, with its principal

21 place of business in Tracy, California.  The corporation has since been suspended.

22       The instant action was filed on June 10, 2008.  On June 16, 2008, process was served

23 upon the corporation by personal service upon its authorized agent (Erica Calderon, Los

24 Angeles), as well as upon the individual defendants.  All returns of service were filed November

26 findings and recommendations will be vacated.

2

1    12, 2008.  *See* Dckt. Nos. 12, 13, 14.

2          On July 23, 2008, individual defendants Anderson and Apodaca answered the complaint

3    on behalf of themselves, in *pro se*, and purportedly on behalf of AA & M Electric, Inc.  Pursuant

4    to a regularly scheduled status conference held on November 12, 2008, and pursuant to the

5    court's scheduling order filed November 13, 2008, the individual defendants were instructed to

6    obtain counsel for AA & M Electric, Inc.  Dckt. No. 16.  On January 14, 2009, after the

7    individual defendants failed to obtain counsel for their corporation, despite adequate time to do

8    so, this court struck defendants' answer as to AA & M Electric, Inc., and directed the Clerk of

9    Court to enter the corporation's default.  Dckt. Nos. 21, 22.  Plaintiff timely moved for default

10   judgment, but repeatedly rescheduled the hearing in an effort to obtain discovery from the

11   defendants.  Dckt. Nos. 23, 25, 35; *see also* Dckt. No. 37.  The individual defendants were

12   served with all pertinent moving papers and exhibits.  The hearing on the motion for default

13   judgment was ultimately held on September 2, 2009, and on November 16, 2009, the

14   undersigned issued findings and recommendations, recommending that default judgment be

15   entered against defendant AA & M Electric, Inc.  Dckt. Nos. 46, 69.

16         In the meantime, on October 1, 2009, the undersigned issued an order granting plaintiff's

17   motion to compel discovery based on the individual defendants' complete and total failure to

18   provide initial disclosures or to respond to any discovery request, and ordered the individual

19   defendants to provide plaintiff with that discovery on or before October 16, 2009.  Dckt. No. 57

20   at 2.  The undersigned also granted plaintiff's request for discovery sanctions; ordered the

21   individual defendants to make payment to plaintiff's counsel, on or before October 16, 2009, in

22   the amount of $2,032.50; and ordered the individual defendants to file an affidavit, on or before

23   October 20, 2009, stating that they had fully complied with the order.  *Id.* at 3.  The order

24   admonished the individual defendants "that failure to comply with orders of this court, the Local

25   ////

26   ////

1   Rules, or the Federal Rules of Civil Procedure, 'may be grounds for imposition by the Court of

2   any and all sanctions authorized by statute or Rule or within the inherent power of the Court.'"

3   *Id.*

4         On November 24, 2009, the undersigned issued an order granting plaintiff's motion to

5   compel the individual defendants to appear for deposition and request for sanctions; directed the

6   individual defendants "to appear for deposition at plaintiff's counsel's Sacramento offices within

7   fourteen days . . . and to coordinate precise dates and times for those depositions with plaintiff's

8   counsel"; and directed the individual defendants to pay $1716.63 to plaintiff's counsel within

9   thirty days and to file with the Clerk an affidavit within fourteen days thereafter which states that

10  they have paid the sum.  Dckt. No. 70 at 4.  Plaintiff's December 15 motion to compel contends

11  that the individual defendants have not complied with the October 1, 2009 order or the

12  November 24, 2009 order.  Dckt. No. 71.

13        Because the individual defendants failed to timely respond to plaintiff's December 15

14  motion, on December 31, 2009, the undersigned ordered the individual defendants to file an

15  opposition or statement of non-opposition to plaintiff's motion and to show cause, on or before

16  January 20, 2010, why plaintiff's motion should not be granted, and why their answer should not

17  be stricken and default judgment entered against them.  Dckt. No. 72.  The order again reminded

18  the individual defendants that *pro se* litigants are bound by the rules of procedure and that failure

19  to comply with the Federal Rules of Civil Procedure and Local Rules may be ground for

20  dismissal, judgment by default, or other appropriate sanction.  The order also specifically stated

21  that "[i]f defendants fail to respond to this order to show cause or fail to respond to plaintiff's

22  motion, the undersigned will recommend that plaintiff's motion be granted; that defendants'

23  answer be stricken; and that default judgment be entered against defendants."

24        On January 29, 2010, because court records reflected that the individual defendants had

25  once again failed to respond to this court's orders, the undersigned issued an order indicating

26  that he "intends to recommend that plaintiff's motion for sanctions be granted, defendants'

4

answer be stricken, and default judgment be entered against defendants," but stating that in order to do so, plaintiff needed to provide information and supporting documentation regarding the appropriate judgment amount.  Dckt. No. 73.  The January 29, 2010 order directed plaintiff to file a proposed order and default judgment, as well as all necessary supporting documentation, by February 10, 2010.  *Id.* at 4-5.  The court once again provided the individual defendants with an opportunity to respond.  *Id.* at 5.

On February 10, 2010, plaintiff filed a memorandum of points and authorities in support of its motion for sanctions, a declaration in support thereof, and a proposed order and default judgment, all of which were served on the individual defendants.  Dckt. Nos. 74-77.  The individual defendants have filed nothing in response.

II.     DISCUSSION

A.     Terminating Sanctions

Federal Rule of Civil Procedure 37(b)(2) provides that "[i]f a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders.  They may include the following: . . . (iii) striking pleadings in whole or in part; [and/or] (vi) rendering a default judgment against the disobedient party . . . ."  Local Rule 110 further provides that "[f]ailure of counsel or of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions authorized by statute or Rule or within the inherent power of the Court."

The undersigned acknowledges that terminating sanctions, including the entry of default judgment, is very severe.  *See Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007).  The Ninth Circuit has "constructed a five-part test, with three subparts to the fifth part, to determine whether a case-dispositive sanction under Rule 37(b)(2) is just: '(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy

1   favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.'"

2   *Id.* "The sub-parts of the fifth factor are whether the court has considered lesser sanctions,

3   whether it tried them, and whether it warned the recalcitrant party about the possibility of

4   case-dispositive sanctions." *Id.* at 1096, n.10. "The list of factors amounts to a way for a district

5   judge to think about what to do, not a series of conditions precedent before the judge can do

6   anything, and not a script for making what the district judge does appeal-proof." *Id.* at 1096.

7           The most critical factor to be considered in case-dispositive sanctions is whether "a

8   party's discovery violations make it impossible for a court to be confident that the parties will

9   ever have access to the true facts." *Valley Eng'rs v. Electric Eng'g Co.*, 158 F.3d 1051, 1058

10  (9th Cir. 1998). "Where a court order is violated, the first and second factors will favor

11  sanctions and the fourth will cut against them. . . . Therefore, whether terminating sanctions [is]

12  appropriate in [such a] case turns on the third and fifth factors." *Computer Task Group, Inc. v.*

13  *Brotby*, 364 F.3d 1112, 1115 (9th Cir. 2004) (citing *Malone v. U.S. Postal Serv.*, 833 F.2d 128,

14  130 (9th Cir. 1987)).

15          As noted in the December 31, 2009 order, defendants have twice been ordered to produce

16  discovery in this case and have completely disregarded those orders. They were also ordered to

17  respond to plaintiff's current motion for sanctions and to the December 31 order to show cause,

18  and failed to do so. Therefore, the first and second factor weigh in favor of terminating

19  sanctions. Additionally, because defendants have been completely unresponsive to plaintiff's

20  numerous attempts to conduct discovery in this case, plaintiff will be prejudiced by its inability

21  to access facts and evidence in this case. Further, the court has twice attempted to obtain

22  defendants' compliance through the less severe method of monetary sanctions but defendants

23  continued to violate court orders and the Federal Rules of Civil Procedure. The court has

24  warned defendants on several occasions that their conduct could result in sanctions, including

25  the striking of their answer and entry of default against them. Indeed, the December 31 order to

26  show cause specifically stated that a failure to respond *would* result in terminating sanctions.

6

1    Yet, defendants have not paid the monetary sanctions and still have not responded to plaintiff's

2    attempts to conduct discovery or to the court's orders.  Therefore, it is clear that less drastic

3    sanctions are simply not availing here.  Although the public policy favoring disposition of cases

4    on their merits will always weigh against entry of default judgment, the undersigned finds that a

5    case-dispositive sanction under Rule 37(b)(2) is just.  Therefore, the undersigned recommends

6    that plaintiff's motion for sanctions be granted, that the individual defendants' answer be

7    stricken, and that default judgment be entered against the individual defendants.

8         B.    Amount of Default Judgment

9         Plaintiff seeks "judgment in the amount of $856,980.00 against each and every

10   defendant," based on actual damages of $285,660.00 and RICO's treble damage provision, 18

11   U.S.C. § 1964(c).  Dckt. No. 74 at 3.

12        As a general rule, once default is entered, the factual allegations of the complaint are

13   taken as true, except for those allegations relating to damages.  *TeleVideo Systems, Inc. v.*

14   *Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citations omitted).  Because plaintiffs'

15   allegations are taken as true on default, the court finds as follows:

16        1.  Plaintiff Square D Company ("Square D") sells its Circuit Breakers to authorized

17   distributors who, in turn, sell them to retail outlets or directly to home builders, who then install

18   them in homes.  Compl., ¶ 15.

19        2.  Square D does not sell Circuit Breakers directly to homeowners and therefore does not

20   have a means to readily identify the homes in which the Circuit Breakers are installed.  *Id.*

21        3.  In late 2004, Square D, in conjunction with the Consumer Product Safety

22   Commission, initiated a voluntary recall of its Arc Fault Interrupter Circuit Breakers,

23   manufactured by Square D between March 1, 2004 and September 23, 2004.  *Id.* ¶ 10.

24        4.  To accomplish this recall, Square D entered into contracts with local electricians to

25   locate homes containing the recalled Circuit Breakers, and to replace them.  *Id.* ¶¶ 16, 17.

26   ////

7

5.  After replacing the Circuit Breakers, the electricians would take the recalled breakers to an authorized Square D distributor and receive full credit against the newly-installed Circuit Breakers, and then send invoices to Square D for payment.  *Id*. ¶¶ 18, 19.

6.  In the fall of 2005, defendant Chawn Anderson, a licensed electrician, on behalf of AA & M Electric d/b/a, entered into a contract pursuant to which Square D agreed to pay $90 per home for labor associated with replacing the recalled breakers, payment conditioned payment upon Square D receiving written invoices listing the address of each serviced home.  *Id*. ¶¶ 20-23.

7.  From November 28, 2005 to June 9, 2007, the individual defendants, on behalf of AA & M Electric d/b/a and later AA & M Electric, Inc., prepared and submitted to Square D, 51 invoices totaling $1,676,700.00.  *Id*. ¶ 24.

8.  The number of home addresses listed in each invoice ranged from 29 to 1,042, and the total number of addresses submitted exceeded 18,000.  *Id*. ¶ 25.

9.  Listed addresses for the Las Vegas, Nevada, area intentionally included both nonexistent (invalid) addresses, and valid addresses that were not serviced.  *Id*. ¶¶ 26-33.

10.  In January 2007, Anderson and Apodaca incorporated AA &M Electric d/b/a into AA & M Electric, Inc., by filing Articles of Incorporation with the Office of the California Secretary of State.  *Id*. ¶ 29.

11.  From January 2007 through May 7, 2007, the individual defendants, on behalf of AA & M Electric, Inc., prepared twenty (20) invoices for work performed in the Las Vegas, Nevada area; at least eleven (11) of these invoices contain false information.  *Id*. ¶ 31;Willhoite Decl., Dckt. No. 75, ¶¶ 11 *et seq*.[2]

---

[2] Of the 20 invoices identified in the complaint, the following invoice numbers (and dates of invoice) contained false information: Invoice No. 20504 (dated 2-27-07); Invoice No. 20219 (dated 3-07-07); Invoice No. 20231 (dated 3-13-07); Invoice No. 20296 (dated 3-22-07); Invoice No. 20307 (dated 3-26-07); Invoice No. 20317 (dated 3-28-07); Invoice No. 20327 (dated 4-04-07); Invoice No. 20341 (dated 4-09-07); Invoice No. 20373 (dated 4-25-07); Invoice

8

12.  These eleven invoices containing false and fraudulent information demonstrate that defendant corporation and its owners were engaged in an enterprise affecting interstate commerce, which involved a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) (RICO),[3] and California Business and Profession Code §§ 17200 *et seq*., and which constituted common law fraud, and breached the parties' contract.  *Id*. ¶¶ 36-81.

Pursuant to the declaration of Jim Willhoite, Product Support Specialist at Square D Company's Lexington, Kentucky plant, Dckt. No. 75 and attached exhibits, and based upon Mr. Willhoite's research and compilation thereof, plaintiff's actual damages are calculated as follows:

a.  The 11 invoices submitted by defendants, on behalf of AA & M Electric, Inc., during the relevant period, contain 5,890 addresses in the Las Vegas, Nevada area, after subtracting for duplicate addresses.  Willhoite Decl., Dckt. No. 75, ¶ 12.

b.  Plaintiff Square D paid defendants a total of $530,100 to replace Circuit Breakers at these 5,890 addresses.  *Id.*

c.  Of the 5,890 addresses billed by defendants to plaintiff during this period, 3,174 addresses do not exist.  *Id*. ¶ 18.

d.  Calculated at $90.00 per nonexistent address, Square D overpaid AA & M Electric, Inc., for work billed in Las Vegas, Nevada, after January 2007, a total amount of $285,660.00. *Id*. ¶ 19.

Therefore, the undersigned finds that plaintiff suffered actual damages in the amount of $285,660.00, as a result of defendants' fraudulent conduct on behalf of AA & M Electric, Inc.

---

No. 20388 (dated 5-01-07); Invoice No. 20403 (dated 5-07-07). *Cf.*, Compl., at ¶ 31, and Exhibit 1 to Willhoite Supp. Decl., Dckt. No. 75.

[3] 18 U.S.C. § 1962(c) provides: "It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

1    RICO provides that "[a]ny person injured in his business or property by reason of a violation of

2    section 1962 of this chapter may sue therefor in any appropriate United States district court and

3    shall recover threefold the damages he sustains and the cost of the suit, including a reasonable

4    attorney's fee."[4] 18 U.S.C. § 1964(c).  Accordingly, plaintiff is entitled to three times its actual

5    damages of $285,660.00, or a total of $856,980.00 in damages.  *See, e.g., Crocker Nat. Bank v.*

6    *M.F. Securities (Bahamas), Ltd.*, 104 F.R.D. 123, 127 (C.D. Cal. 1985) (entering default

7    judgment in amount of $975,000, plus interest, where one defendant failed to answer or

8    otherwise respond to claims for affirmative relief asserted against it, second defendant failed to

9    comply with requirements of local court rules by failing to provide plaintiff's counsel with copies

10   of documents that it intended to use in support of its defense of case or with preliminary

11   discovery schedule and list of witnesses, defendants violated both a local rule and court order by

12   failing to retain new counsel after previous counsel had withdrawn, and defendants and their

13   representatives failed to comply with court order to appear for deposition).  Each of the

14   defendants is jointly and severally liable for the total amount.  *Oki Semiconductor Co. v. Wells*

15   *Fargo Bank*, 298 F.3d 768, 775 (9th Cir. 2002) ("If a RICO conspiracy is demonstrated, '[a]ll

16   conspirators are liable for the acts of their co-conspirators.' . . . Holding RICO conspirators

17   jointly and severally liable for the acts of their co-conspirators reflects the notion that the

18

19          [4] A judgment by default may not be entered without a hearing on damages unless, the
     amount claimed is liquidated or capable of ascertainment from definite figures contained in the
20   documentary evidence or in detailed affidavits. *United Artists Corp. v. Freeman*, 605 F.2d 854,
     857 (5th Cir. 1979); *see also Geddes v. United Financial Group*, 559 F.2d 557 (9th Cir. 1977);
21   *Eisler v. Stritzler*, 535 F.2d 148 (1st Cir. 1976).  Additionally, punitive damages cannot be
     awarded without a hearing because they are not liquidated or readily computable. *Comdyne I,*
22   *Inc. v. Corbin*, 908 F.2d 1142, 1152-53 (3d Cir.1990).  Here, the amount plaintiff seeks in actual
     damages is capable of ascertainment from definite figures contained in Mr. Willhoite's detailed
23   affidavit. Further, treble damages under RICO are remedial, rather than punitive, and are
     capable of ascertainment from definite figures.  *See Epstein v. Epstein*, 966 F. Supp. 260, 262
24   (S.D.N.Y. 1997) ("[B]oth the Supreme Court and the Second Circuit have repeatedly described
     RICO's private right of action as remedial in nature."); *see also Sciambra v. Graham News Co.*,
25   841 F.2d 651, 657-58 (5th Cir. 1988) (Distributor's antitrust damage award against supplier was
     subject to trebling, notwithstanding its being premised on default judgment imposed on supplier
26   as sanction for discovery abuses).

damage wrought by the conspiracy 'is not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole.'"); *A.G. Edwards & Sons, Inc. v. Smith*, 1991 WL 253010, at *5 (D. Ariz. Sept. 10, 1991).

III.     <u>CONCLUSION</u>

Accordingly, IT IS HEREBY ORDERED that the findings and recommendations filed November 16, 2009, Dckt. No. 69, are vacated.

IT IS FURTHER RECOMMENDED that:

1.  Plaintiff's motion for terminating sanctions, Dckt. No. 71, be GRANTED;

2.  Plaintiff be awarded $856,980.00 in damages, against defendants AA & M, Electric, Inc.; Chawn Anderson, formerly d/b/a AA & M Electric; and Heather Apodaca, formerly d/b/a AA & M Electric, jointly and severally; and

3.  The Clerk be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  February 25, 2010.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

11